144 So.2d 420 (1962)
Johnny W. RUSHING
v.
WEYERHAEUSER COMPANY et al.
No. 440.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1962.
*421 A. J. Marciante, New Orleans, for plaintiff-appellant.
Curtis, Foster, Dillon & Huppenbauer, Gerard M. Dillon, Francis J. Mooney, Jr., New Orleans, for defendants-appellees.
Before MILLER, VIDRINE and CUTRER, JJ.
MINOS D. MILLER, Jr., Judge pro tem.
By suit filed February 21, 1961, Johnny W. Rushing seeks to have annulled a compromise settlement of a workmen's compensation claim approved by judgment of court signed July 14, 1960. In the joint petition of plaintiff, Rushing, and defendants Weyerhaeuser Company, Employer, and Fireman's Fund Insurance Company, Insurer, by which the parties sought the July 14, 1960 compromise settlement, the parties alleged:
"III
"That on or about June 15, 1960, while the Employee was engaged in the course and scope of his employment by the Employer as a laborer, he suffered a severe headache and later that evening, a numbness came over him which caused him to fall to the ground, which said symptoms were later described in a report of Dr. Richard W. Levy, dated June 21, 1960, a copy of which is attached hereto and made a part hereof as having been caused by spontaneous subarachnoid hemorrhage.
"IV
"That immediately following the said occurrence and thereafter, the Employee was furnished prompt medical attention; and that in behalf of the said Employee, the Insurer has paid doctors, and other medical bills totalling $59.75.
"V
"The Employee is now contending that he has not completely recovered from his aforesaid attack; that the said occurrence was the result of the work in which he was engaged at the time of the occurrence; that he is unable to perform the work in which he was engaged on the date of the aforesaid occurrence; and that, therefore, he is entitled to receive workmen's compensation payments from the Employer and/or the Insurer of the full sum of $35.00 per week for the duration of his disability, not to exceed a period of 400 weeks from the date of the aforesaid occurrence.
"VI
"Employer and Insurer are now contending that the aforesaid occurrence and temporary disability of the employee was not an `accident' or an `injury' within the meaning of the Workmen's Compensation Laws; that the Employee has fully recovered from the effects of the aforesaid occurrence; that he is not permanently and totally disabled within the meaning of the Workmen's Compensation Laws of the State of Louisiana; that he is able to perform the work in which he was engaged on the date of the aforesaid occurrence; that he is not entitled to receive any Workmen's Compensation payments from the Employer and/or *422 the Insurer, and in support of their contentions, the Employer and Insurer annex hereto a copy of a report of Dr. Israel Fisher, dated July 9, 1960.
"VII
"Petitioners thusly aver that a bona fide dispute exists between Employee on the one hand and Employer and Insurer on the other hand with respect to whether or not the Employee suffered an `accident' or `injury' within the meaning of the Workmen's Compensation Laws; with respect to whether or not Employee has fully recovered from the effects of the aforesaid occurrence; with respect to whether or not Employee is able to perform the duties of the employment in which he was engaged on the date of the aforesaid occurrence; and with respect to whether or not he is disabled within the meaning of the Louisiana Workmen's Compensation Laws, and with respect to whether or not the said Employee is entitled to receive any Workmen's Compensation payments from Employer and/or Insurer."
The medical reports attached to the settlement were by Dr. Israel Fisher, stating that he found no evidence of injury at this examination of June 17, 1960, but referred plaintiff to Dr. Levy. Dr. Levy's medical report concluded that plaintiff had sustained a spontaneous subarachnoid hemorrhage and stated:
"It is my opinion that this patient most likely had a rupture of an aneurysm at the base of the brain. I believe that the events immediately surrounding the on set of this hemorrhage exclude any association between this patient's job assignment and the occurrence of the intracranial bleeding episode."
There followed an allegation that plaintiff was not represented by an attorney with the request that the court appoint an attorney at law to represent and advise the Employee relative to the proposed compromise settlement. An attorney at law was appointed and certified that he consulted with and advised the Employee of the legal effect of the compromise and recommended that the settlement be approved by the court. The settlement for $300.00 was approved by judgment of court dated July 14, 1960, and on that same day, plaintiff acknowledged payment of said sum "in full and final settlement of the judgment * * *."
The allegations on which plaintiff must rely to set aside the July 14, 1960 judgment are:
"7.
"That thereafter (after plaintiff had released from the hospital) petitioner was contacted by a representative of the defendant insurance company, who advised petitioner that his injury was not in anyway connected with or caused by his job and that petitioner was accordingly not entitled to any compensation benefits but that his company would nonetheless pay him $300.00.
"8.
"That said insurance adjuster knew or should have known that petitioner's condition was caused by, brought about or aggravated by the strenuous work that petitioner had been performing and that accordingly his actions in advising petitioner that his claim was not compensable were fraudulent and misrepresenting of the facts.
"9.
"That defendant's sending petitioner to their physician for an operation to attempt to correct his condition is further evidence of their knowledge and recognition of petitioner's right to compensation benefits.
"10.
"That defendant's failure to obtain the written opinion of another medical *423 expert and attach same to the ultimate compensation settlement for the edification of the Court is further evidence of their intention to defraud, misrepresent, withhold and conceal evidence from petitioner, the Court and the attorney appointed by the Court to represent petitioner.
"11.
"That accordingly petitioner believes and so avers that the attorney appointed by the Court to represent petitioner was not afforded the proper and sufficient evidence nor the opportunity to properly advise petitioner of his rights."
In response to plaintiff's suit of February 21, 1961, defendants filed exceptions of no cause of action and res judicata and a plea in bar. Defendants took a discovery deposition of Johnny W. Rushing and later filed a motion for a summary judgment attaching plaintiff's deposition, and affidavits of Joseph L. Martinez, adjuster, Dr. Richard W. Levy, neurosurgeon, and Israel M. Augustine, Jr., attorney at law. Plaintiff was ruled into court to show cause why a summary judgment should not be rendered against him.
On April 14, 1961, the trial court sustained defendants' exceptions of no cause of action and res judicata and their plea in bar, and granted defendants' motion for summary judgment. It is from this judgment that plaintiff has appealed.
No counter affidavits were filed by plaintiff, and it must be assumed that there is no dispute with respect to the facts set forth in the affidavits and other documents whereon defendants rely in support of their motion for summary judgment. Goodart v. Maryland Casualty Company, La.App., 139 So.2d 567, 570.
The only serious question raised by plaintiff's petition is the contention that defendants knew the hemorrhage suffered by plaintiff on June 15, 1960, was an accidental injury caused or brought on as a result of his job and was thus compensable, but that they falsely represented to him that his injury was not in any way connected with or caused by his job and was, therefore, not compensable. The medical reports on file in the compromise settlement proceedings, and the affidavits filed by defendants refute this contention. There is no testimony or affidavits, medical or otherwise which would suggest that defendants knew that plaintiff suffered an accident or that his work contributed in any way to the spontaneous subarachnoid hemorrhage suffered by plaintiff. There is no testimony in plaintiff's deposition to support this contention.
All the requirements of law were complied with on the confection and consummation of the compromise settlement which is sought to be annulled. Plaintiff, who was at one time a "grammer school teacher," was duly advised of his rights, both by the court appointed attorney and by the court. In the joint petition for approval of the compromise it was specifically set forth that one of the controversies was whether or not plaintiff suffered an "accident" or "injury" within the meaning of the Workmen's Compensation Laws. Having heretofore presented this issue to the court and having it finally adjudicated by judgment settling the case, plaintiff has had his day in court and is now forever barred under the doctrine of res judicata, from attempting to revive the same issue. Racine v. Campti Lumber Co., La.App., 43 So. 2d 288; Jenkins v. Pemberton, La.App., 87 So.2d 775.
The trial court acted properly in maintaining the motion for summary judgment on the basis of the uncontroverted affidavits furnished. The cases of McHenry v. Wall, La.App., 157 So. 632, McCastle v. Architectural Stone Co., La.App., 4 So. 2d 120, Brooks v. Griggs Casing Crews, Inc., La.App., 136 So.2d 693, and Fontenot v. Goldenstern Pipe & Supply Co., La.App., 50 So.2d 484, all cited by appellant, are not apposite for the reason that we are here *424 concerned with a motion for a summary judgment as authorized under LSA-C.C.P. Art. 966 where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
For these reasons the judgment is affirmed, costs to be paid by appellant.
Judgment affirmed.